(No. 12382.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee; vs. THE
NORTHERN TRUST COMPANY, Exr. Appellant.

*Opinion filed October 27, 1919.*

1. INHERITANCE TAX—*Federal estate tax should be deducted be-
fore computing State inheritance tax.* The Federal estate tax is a
charge or an expense against the estate of the decedent rather than
against the shares of the legatees or the distributees, and as a part
of the expense of administration this tax should be deducted be-
fore computing the State inheritance tax.

2. SAME—*when conveyance of property in trust for grantor's
children is not subject to tax.* A conveyance of property to a trus-
tee, to be held in trust for the grantor's children, is not subject to
an inheritance tax, where the deeds were not made in contempla-
tion of death and were not intended to take effect in possession or
enjoyment only at or after the death of the grantor, although the
right of revocation by the grantor is reserved in the deeds.

3. SAME—*transfer will be taxed where deed was manifestly in-
tended to evade statute.* Whenever it becomes manifest that a deed
was intended as an evasion of the Inheritance Tax act the State
will be protected in the collection of the tax, no matter what the
form of the deed may be.

4. DEEDS—*clause of revocation in conveyance in trust does not
render deed testamentary.* A conveyance to a trustee for the bene-
fit of the grantor's children, with a power of revocation in the
grantor, is a proper mode of deeding property to one's children and
of protecting them in its use, and the clause of revocation does not
render the deed testamentary nor cause it to take effect only after
the death of the grantor, but the deed takes effect at once and con-
tinues in force unless revoked by the grantor in his lifetime.

5. STATUTES—*construction of a statute adopted from another
State.* Where a statute is adopted from another State or country
and has been construed by the courts of that State or country the
statute will be held to have been adopted with the construction so
given to it, if it does not express an intention to the contrary.

APPEAL from the County Court of Cook county; the
Hon. J. J. COOKE, Judge, presiding.

FISHER, BOYDEN, KALES & BELL, (ALBERT M. KALES,
and DARRELL S. BOYD, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, and LEROY MILLNER, (WALTER K. LINCOLN, and HENRY F. HAWKINS, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Northern Trust Company, executor of the estate of Charles W. Pardridge, deceased, has appealed from a judgment of the county court of Cook county requiring appellant to pay inheritance taxes in the amount of $31,818.20 upon the property interests disposed of by two deeds of settlement executed by Pardridge in his lifetime and a further inheritance tax of $53,144.20 on interests disposed of by his will.

There are three questions raised by the assignment of errors on this record: (1) In computing the State inheritance tax on the value of the property passing by the will of the testator is appellant entitled to have first deducted therefrom the Federal estate tax? (2) Are the property interests disposed of by the aforesaid deeds of trust subject to an inheritance tax? (3) If the properties transferred by the deeds of trust are taxable, should they be taxed according to their value on their respective dates or as of the date of the testator's death?

It is conceded by appellee that the court erred in holding that the properties transferred by the deeds of trust should be assessed on their values at the respective dates of the deeds instead of their values at the date of the testator's death, and in the view that we have taken of this case that question need not be further considered.

The only question relative to the tax assessed on the property passing by the will of the testator is the refusal of the court to first deduct the Federal estate taxes as an expense of the estate before assessing the tax on the property passing by will. The testator died November 17, 1917. He left an estate valued by the inheritance tax appraiser

at $2,871,151.71, which he disposed of by will. The county court, in assessing the State inheritance tax on that property, refused to deduct the Federal estate tax paid by the executor, amounting to $316,432.40. In this ruling the court erred. The Federal estate tax is a charge or an expense against the estate of the decedent rather than against the shares of the legatees or the distributees, and as part of the expense of administration this tax should be deducted before computing the State inheritance tax. *People* v. *Pasfield,* 284 Ill. 450.

The two deeds in question contained substantially the same provisions, were absolute in form and were executed to the Northern Trust Company, as trustee, on May 6, 1910, and on December 18, 1911, respectively. The real estate and leasehold interests so conveyed were valued by the inheritance tax appraiser at $2,333,333.33. Besides the tax assessed on this property, on a large balance thereof there is still left in suspense, under the judgment of the court, a State inheritance tax by reason of the fact that some of the beneficiaries cannot be ascertained until the exercise of certain powers of appointment. Trust instruments separate and apart from the deeds were executed on the respective days that the deeds were executed, and they are substantially the same in form and contain substantially the same provisions. They provide that the trustee shall take possession of the trust property, with complete power to manage, lease, care for and protect the same; to collect the rents and incomes therefrom; to pay taxes and assessments levied thereon; to repair and keep the buildings in repair and re-build the same if destroyed; to insure the same against fire and other casualties usually insured against by prudent owners in Chicago, and to have the right to institute and defend all legal proceedings affecting the same. The trustee is to hold the property in trust for the testator's four children, Edward W. Pardridge, Albert J. Pardridge, Evelyn Florence Pardridge Engalitcheff and May Aline Pard-

ridge Sargent, for their natural lives and until the death of the last survivor of them, in equal shares as tenants in common, and is to hold the share of each deceased child in trust for such person or persons as such deceased child shall by last will or testament have appointed. In default of such appointment the trustee shall hold such deceased child's share in trust for the issue of such deceased child, and if any child shall die without issue its portion shall be divided equally among the other shareholders of the trust estate. The distribution of the trust estate is to be made upon the death of the last survivor of the four children. During the lifetime of each of the four children the trustee is to pay in monthly installments the net income arising from such child's share, and from and after the death of any of said four children, and until the death of the last survivor of them, the net income arising from such deceased child's share is to be paid in monthly installments to the person or persons for whom such share is held under the terms of the trust agreements. The deeds also provide that a majority of the four children then living may at any time, by an instrument under seal delivered to the trustee, admit their brother Charles A. Pardridge as a tenant in common with them in such property, with like powers and privileges granted to him for the receiving and appointing persons to receive said property and the issues and profits thereof. His interest, however, is at no time to exceed one-fifth of the income of said trust estate, and in case he is so admitted as a beneficiary the final distribution of the property is to be made on the death of the last survivor of the five brothers and sisters, and during his lifetime the trustee is to hold the property for the benefit of the five brothers and sisters upon the same terms as provided in the original trust agreement for the original four brothers and sisters. The deeds provide for compensation to the trustee and for the appointment of the two sons Edward W. and Albert J. Pardridge, and the survivor

of them, as the agent of the trustee in the management of the trust estate, and also fix their compensation and require them to give a bond. Their powers and duties are to determine the rental to be charged for the property and to negotiate and prepare all leases for the same, to assume entire charge of affairs and make all contracts for the same, pay all taxes and assessments against the trust estate and insure the same, and to render statements of accounts of all the receipts and disbursements concerning the same. The trustee has full authority to remove said agents, or either of them, in case of neglect or misconduct or inability to discharge their duties as such. In case the trustee shall resign, the majority of the beneficiaries then entitled to share in the net income of the trust estate are given the right to name the successor of the trustee. By the terms of the trust deeds no person entitled to a share of the net income of the trust estate shall have the right to anticipate the same, nor to sell, assign, mortgage, pledge or otherwise dispose of or incumber his share in the trust estate or any part of it or the income therefrom, and no share of the trust estate, or the income arising therefrom, shall be liable for his or her debts or be subject to attachment, garnishment, execution, creditor's bill or other legal or equitable process. The trust agreements finally reserve to the settlor the right of revoking the deeds and each and every trust therein created and declared, either in whole or in part, by notice in writing to the trustee, and in case of such revocation said trust estate, or the portion thereof so revoked, shall be conveyed by the trustee to the settlor, to be held by him as his sole and absolute property and discharged from all the trusts declared in said trust agreements.

Oral testimony was offered in the county court showing clearly that the provision for the revocation of the trust agreements was inserted by the attorney who drew up the same at his own suggestion and without any instructions from the settlor with reference to the same. The testimony

further shows that the settlor exercised no further control over the property whatever after the trust agreements and conveyances were executed and received none of the income therefrom. He even declined to be consulted about the management thereof when on one occasion one of the sons sought his advice. The trustee accepted the trust and up until the settlor's death managed the property according to the provisions of the trust agreement and without consulting him with reference to the same, and the settlor never offered any suggestions as to the management of the property to anyone. About all this testimony was excluded by the court over appellant's objections. The court, however, found as facts that neither one of said trust instruments was made by the settlor in contemplation of death, and that neither one of said instruments was intended to take effect in possession or enjoyment at or after his death, and that both of said instruments were intended to, and that they actually did, take effect in possession and enjoyment on the respective dates of their execution. The court further found that the donor did not during his lifetime and subsequent to the respective dates of execution of said deeds, exercise any dominion, power or control over said property, and did not during his lifetime, by any instrument in writing or otherwise, revoke the trust deeds, or either of them, in whole or in part.

The oral evidence and the trust deeds and the trust instruments all sustain the finding of the court as to the facts, and there is no contention whatever between the parties to this record in that regard. By the written instruments the grantor or settlor intended to make a voluntary settlement of a large part of his property. The only right or power reserved in the deeds was the right of revocation. The instruments cannot be construed in any way as reserving any right in the settlor to alter or amend the trust or to add to or withdraw from the trust any portion of the

property or to exchange any portion of the property by substituting other properties for the same. The instruments give no right of control to the settlor of any of the properties conveyed or even the right to direct the management or enjoyment of the trust estate. The evidence is undisputed, also, that he never, in fact, exercised or sought to exercise any right of control, disposition or enjoyment over the property and never received a penny of the income or profits of the same. He expressed it as his wish, when consulted by one of his sons, that they and the trustee should manage and control the property and to use their own judgment, and that he did not want to be longer bothered or troubled by such affairs. The mere right of revocation would not have been written in the trust instruments had it not been suggested by his attorney, and the attorney advised it as a matter of protection of the donees in case any of them proved to be spendthrifts or otherwise incapable of protecting their own interests. This character of deed, with such a power of revocation, has long been recognized by our law as a proper mode of an ancestor deeding his property to his children and of protecting them in the use and enjoyment of the same. All well-skilled and far-seeing lawyers advising for the benefit of their clients usually suggest the insertion of such a clause of revocation, and no court, so far as we know, has ever declared that such a deed is testamentary in character or is to be held to take effect only after death, by reason, alone, of such a clause of revocation. In fact, it is not possible for such a clause to have such effect. As a matter of fact, such a deed takes effect at once and continues in full force and effect until actually revoked. If revoked, it can only be revoked during the life of the grantor, and if he does not call into effect such power of revocation during his lifetime it continues in full force and effect forever after his death. If he revokes the deed under such a power the deed becomes

a nullity and the title will be re-invested in the settlor by
the deed of re-conveyance by the trustee.

The court in substance held as a proposition of law that
the powers of revocation reserved to the grantor in the
trust instruments were sufficient, in themselves, to cause the
property passing by the deeds of trust to be taxable under
section 1 of the Inheritance Tax act. So far as applicable
that section provides: "A tax shall be and is hereby im-
posed upon the transfer of any property, real, personal or
mixed, or of any interest therein or income therefrom, in
trust or otherwise, * * * when the transfer is of prop-
erty made by a resident * * * by deed, grant, bargain,
sale or gift, made in contemplation of the death of the
grantor, vendor or donor, or intended to take effect in pos-
session or enjoyment at or after such a death." (Hurd's
Stat. 1917, p. 2500.)

There is no contention that the deeds were made in con-
templation of death. It is admitted that they were not so
made. As the deeds were not intended to take effect in
possession or enjoyment at or after the death of the settlor,
and as this is also an admitted fact, the conveyance does
not come within the statute and the property was not tax-
able under our Inheritance Tax law. Our Inheritance Tax
law, so far as this provision is concerned, was literally
copied from the New York statute. The New York court
of appeals confirmed, without delivering an opinion, the ap-
pellate division of the Supreme Court in holding that the
mere power reserved in a deed to revoke the same did not
operate to change the effect of the deed but that the deed
took effect at once and was so intended, and that the prop-
erty should not have been included in an appraisal of an
estate for the purpose of taxation under the New York In-
heritance Tax act. (*In re Masury's Estate,* 51 N. Y. Supp.
331; affirmed by New York court of appeals in 159 N. Y.
532.) Where a statute is adopted from another State or
country and the same has been construed by the court of

such State or country, it is the general rule that the statute is to be held to have been adopted with the construction so given to it, and particularly where the statute itself does not express an intention to the contrary. *People* v. *Carpenter*, 264 Ill. 400.

We have been referred to other New York cases, and particularly to the case of *In re Bostwick*, 160 N. Y. 489, as making a different holding from that in *In re Masury's Estate*, just cited. The *Bostwick case* does not in anywise overrule the former decision of the New York court of appeals but serves to distinguish that case from the cases later considered by that court.

The construction that we have placed upon this statute will not, in our judgment, aid parties in evading the Inheritance Tax law. Whenever it becomes manifest that a deed was intended as an evasion of the Inheritance Tax law the State will be protected in the collection of the inheritance tax, no matter what the form of the deed may be. We are entirely unwilling, however, to declare that trust deeds and trust instruments in the form in which we find those under consideration in this record render the property conveyed taxable under our Inheritance Tax act by the mere insertion of a clause of revocation so useful and so long in use for the protection of grantees in such deeds, when it so clearly appears that that was the sole intention as it does in this case.

The judgment of the county court is reversed in so far as it affects the property conveyed by the trust deed, with directions to modify the judgment affecting the property transferred by will in accordance with the views herein expressed.    *Reversed and remanded, with directions.*